Case No. 19-5015, American Anti-Vivisection Society, Ed Powell Appellants v. United States Department of Agriculture, Ed Powell Mr. Poston for the Appellants, Mr. Cobble for the Ambulance Thank you, Your Honors, and may it please the Court, I'm Lau Kosis and I represent the Appellants. The Animal Welfare Act requires the Secretary to promulgate regulations that govern the humane handling, care, and treatment of animals. Everyone agrees that since 2004, birds not bred for use in research have been considered animals under the Act. Everyone also agrees that since 2004, there have never been regulations, general or otherwise, that govern the handling and care of birds. The Appellants brought straightforward APA claims to force the Secretary to comply with his statutory duty. Can you address standing for a moment before you get into the merits, and in particular, how the activities that the Vivisection Society identifies are different from the activities that it would be engaged in if USDA had regulated as you urge? Sure. So one of the harms is the same harm as in PETA. It's the lack of information that the agency is not collecting. The AAVS relies on that information to both inform its members and the public about bird treatment. Can you be a little bit more specific about what kinds of information you're talking about? Sure. So the court in PETA flagged the inspection reports and the other data that it would collect about bird mistreatment, because if you go to our brief, the GAO report we cite, the agency is telling people, don't report anything about birds to us. So we have no data or inspection reports to pull from, and that was what the Appellants in PETA alleged as well. That's information we lack. I want to separately also talk about the diversion of resources point. The AAVS is focused on developing alternatives to using animals in testing. We can't do that as fully as we want to, because we're diverting resources to develop standards and guidelines for how to care and handle birds that the Secretary should have developed some time ago. So those are the same harms, I think, that the Appellants in PETA allege. The same statute there and the same defendant, and we think we have standing for the same reason. So if Judge Millett's view prevailed, you would not have standing. I mean, I realize she wrote separately, and it's not the law of our court, but do you have a theory under which it would not even run into the objection that she raises? Sure. So I think if you look to Havens itself, Havens says that this conduct that can cause a drain on resources to your agency, if you have to spend money to counteract someone else's unlawful conduct, Havens unanimously from the Supreme Court said that that would give rise to standing with the money spent to counteract bad acts by someone else. And I think under that reasoning, we would prevail here, too. I know that Judge Millett offered an opinion as to why Havens might be distinguishable, but I think if you read Havens, there's only a few sentences where they say that the third-party organization there, which was called HOME, they had standing because the racial-steering practices of the defendant indirectly caused that third-party to spend their resources to counter those practices. And I think we're in the same position. And she focused on saying, you know, if you're seeking information and then you want to turn around and give it to prosecuting authorities, she said it's like, you know, asking the police to report to you so that you can then report to the police. And what's your response to that? Sure. So we're not interested in the prosecution or non-prosecution of another. I think the informational injury here is the same as in PETA. The agency doesn't have data collects, and we need that data both to inform our members and the public about how many birds are being bred for use in research or used in research, how birds are being treated in research. That's all information we need to structure our priorities and to continue our mission. And we don't have that information without the agency's regulations. I do want to be—sorry, Your Honor. No, you finish your sentence. I was just going to transition. I do want to be clear. I think what we have standing for the same reasons as in PETA, PETA does not control on the merits because of— Well, before you get to that, I realize only one of your clients needs standing. Could you just—do you think the Avian Welfare Coalition is also controlled by PETA, or is that a different theory? I do think it's the same, Your Honor. I think the AWC is special because it suffers its harm more acutely than PETA because the AWC is really bird-specific, whereas PETA is more of a general animal organization. But the AWC diverted resources just like PETA did. The AWC has had to spend time developing these guidelines that the agency hasn't, and we've had to monitor state and local laws to try and find ways to report bird mistreatment that we wouldn't have to do if the agency had these regulations it wasn't forcing. So I think both my clients have standing for the same reasons as the Court said in PETA, but I do want to be clear that the PETA decision on the merits doesn't control because the appellants there abandoned their claim of unreasonable delay. And I think this Court's opinion quite carefully couched its holding by saying we really don't have the power to order the USDA to act. I think the language is, quote, at least in light of PETA's abandonment of its claim of unreasonable delay. Do you have any idea why PETA abandoned its claim in that case of unreasonable delay? I don't, Your Honor. We don't cite the oral argument from that case in our brief, but I listened to it in preparation, and Chief Judge Garland engages in a colloquy with PETA's counsel. His word was befuddled, and we are too. There really was no explanation as to why they abandoned it, and really it was a two- or three-minute exchange where he tried to figure that out. But I think that was central to the Court's opinion. We've not abandoned it here. It's in our complaint. We've pressed it on appeal over and over again. PETA also really brought an enforcement claim. They said you're not enforcing the general regulations as to birds. We don't have an enforcement claim, and we're not seeking to force the agency to apply the general rights to birds. We really just need something that applies to birds. You just either want the general regulations applied to birds, or you want bird-specific regulations. I think that's right. I mean, we really – it could be any number of things. I mean, there's a ton of hypotheticals they could say. Do you agree that if we were to agree with you about that, that that's what the law requires, then the remedy is to remand it, right, to the agency – is to remand it to the district court, right, to determine whether or not you can make out a – to determine whether the agency action has been unreasonably delayed? I think that's right, Your Honor, yes. We would ask for reversal because we do think we've stated a claim of merits, and we don't want more. I understand that, but, yeah. But you didn't move for judgment on the pleadings. The only issue before us is whether the district court erred in dismissing the case. So we don't have a way, for example, legally to say, you know, not only are they wrong, you're right, and you're entitled to some relief. That has to be remanded. I think that's right. And I only say reversal just to clarify that I think the court should make clear we've pled standing and we've pled a claim on the merits, so there shouldn't be any more 12B6 practice. But, Judge Pillard, you're right. This court can't have our judgment for us. If we prevail on appeal and go back, we can, depending on how this court frames its opinion, we can explore quick ways to try and get judgment and relief from the agency. Judge Taylor, you had mentioned the delay. I do think it's notable that really neither the district court nor the government is trying to defend the 15-year delay as reasonable, and we don't think any case from this court really comes close to ratifying a delay of that long. So I think if we get to the point of saying the statute certainly requires something in place for DIRTS and the record makes clear there's nothing, that 15-year delay is unacceptable. Just back on standing, on the Avian Welfare Coalition standing, one of the things that the department says is, well, surely it would be monitoring state laws whether or not there's also a federal regulation in place, and so they wouldn't be actually doing anything more in the absence of the federal regulation. And your response to that is? Sure, a couple of points. One, I think that's contrary to the good faith allegations in our complaint where we've pled over and over, we are spending money we otherwise wouldn't spend because of the lack of regulations. I think on the point of state and local laws, we wouldn't be spending as much money monitoring them if we had a central agency like the USDA through which to report claims of bird mistreatment. I do just want to also quickly note, most states really only have animal cruelty laws. They don't have animal handling or care provisions, and those cruelty laws also have pretty significant exceptions that carve out lots of animals from them as well. I see I'm cutting to my rebuttal time. I want to just make one more point about the relief we sought. The district court's opinion, I think, over and over, mischaracterizes the relief that we wanted. I just want to be clear for this Court, we've never sought bird-specific relief, and I think that was a big reason the district court dismissed our claims, and can we thank for that reason a lot. We'll give you some rebuttal time, but let me just also ask you, is your arbitrary and capricious claim distinct from your unreasonably delayed claim, or is it really another legal framework for pressing the same point? I think it's distinct, but I think if we prevail on 706.1, ultimately I think the issue that forms the arbitrary and capricious claim goes away. Well, you don't have any final agency action under that claim anyway, right? Well, so I disagree, Your Honor. I think we've pled it as this informal pattern of practice that the agency has of saying that the USDA just doesn't have jurisdiction over birds, and that's just flatly inconsistent with the agency's 2004 rulemaking that said birds are animals under the Act. Well, in effect, then, how is that any different than your unreasonably delayed argument? Don't they then come together? It's slightly different. I want to be clear. If this Court rules for us on 706.1, I think we're very happy, and this claim will sort itself out. But there is a slight difference because even without any rigs for birds, birds are still AWA covered. And if you look at paragraphs 96 to 100 of our complaint, we cite several instances where the agency has made flatly inconsistent statements to the public saying birds aren't covered at all. And that's the informal pattern of practice that we think is unlawful, and justiciable for the same reasons as in the Hispanic Affairs case that we cite. Your Honors, I'm happy to answer more questions, but I reserve the floor to you. Okay. We'll hear from the government. Thank you. May it please the Court. I'm John Cappell from the Appellate Staff Civil Division, Department of Justice, representing the Applebee's, USDA, and the Secretary. At the outset, I would emphasize that the government shares the same concerns that are set forth in Judge Millett's opinion. Well, but that was a concurrence. That was. Well, it was a – it wasn't even characterized – it was characterized specifically as stupidity. You've got to argue your case based on what the Court – the Court's opinion there. Excuse me? You've got to argue your case on the basis of what the Court said. Right, right. Okay. So don't – I mean, if you tell me you agree with Judge Millett, I'm beginning to think maybe you have doubts about your standing argument. No, Your Honor, I don't mean to suggest that. Okay. What we believe is that the – that PETA essentially represented the outer limits of standing doctrine and that the allegations in this case do not even measure up to those in PETA. They are even more vague, general, and nonspecific than the allegations in PETA. And in that respect, I would note that – that the – that the Court in PETA did note as part of its analysis that the – that the plaintiffs there – the plaintiff there had specifically alleged economic harm, that it was spending – spent $10,000 already, and it anticipated spending $3,000 a year in the future because of the  So we've never required dollar figures. No. We've never required dollar figures as a basis for standing. I know, Your Honor, you have – you have not specifically required dollar figures, but nonetheless, that highlights the difference because here the – there – again, in our view, it is not sufficient simply to say that because the agency has not done something, the – the plaintiff has expended further – has expended resources and therefore is injured. But they haven't just said – they haven't just said that. They've explained what they've had to do specifically in terms of activities and that it's required substantial resources. Your Honor, I would respectfully disagree. I think that they have not – they haven't specified – they haven't specified, for example, a publication or a part of a publication that they would not have – that they would not have done if there were regulations in effect on this subject. Well, I don't know. On JA-14, as part of the complaint, the Avian Welfare Coalition said it only began producing shelter guides and webinars on handling of and care of birds in captivity when it was clear that USDA did not intend to enact regulations. So they're trying to step in, at least in the Avian Welfare Coalition's allegations, step in and provide some kind of standards, guidance, information for concerned individuals who are dealing with birds. So if we were to take that as adequate, on the merits, it's a little unclear to me what the Department's position is on the merits. Is it the position that it is – that the Department has discharged its obligation because the Act does not refer to all animals but only animals, and therefore the general regulation with respect to some animals discharges the Department's obligation? Is that your argument? Well, the argument really is that it's not so much the all animals point. It is the point that the statute requires the promulgation of general standards with respect to animals and then specific standards with respect to dogs, exercise of dogs, and the psychological well-being of non-human primates, and that that is the universe of required action under the statute. Right. And the question, the puzzling thing is if the claim is not that avian-specific regulation is needed and that just some regulation is needed, I'm not sure that I follow what your argument is, that actually no regulation is needed with respect to birds. I just don't understand actually what the argument is. Like if the Department had said, okay, animals, we're just going to do squirrels, and then we see that in the statute we also specifically have to do dogs and some other things, would that satisfy the Department's obligation to regulate with respect to animals because squirrels are among potential animals? No, Your Honor. I don't believe that that would, but I believe that that's distinguishable from this situation where the regulation in subpart F is designed to embrace animals globally, and that was in response to 2143A1's requirement that the agency promulgate such regulations. Okay, but let's just get to the core of this. The agency concedes that its general regulations don't cover birds, yet the statute defines animals as to include birds not bred for research. So birds not bred for research are not being protected by the current system, isn't that right? They are currently not being regulated, but at the same time, I would just, if I may. Yeah, sure, go ahead. What the agency did was in 2004, when it recognized that birds not bred for research are animals covered by the statute, it issued the advance notice of proposed rulemaking in which it said that it believed that the general regulations in subpart F were not a good fit, that they were essentially, that it would not be appropriate or adequate to use them with respect to birds, and that is why it requested comments with respect to appropriate regulation standards with respect to birds. So far, all you're saying, you're convincing me I'm right. That's what you're saying. Even the department realizes it needs regulations of birds not bred for research. That's why it issued the advance notice of proposed rulemaking, right? Well. Is that right? Ultimately, yes. Ultimately, the statute covers birds and they are to be regulated. And so what's the reason why you agree then that they are to be? So your answer to Judge Pilderd is no, our position is that birds, that the department does need to protect birds not bred for research, correct? Legally obligated to do that, correct? Yes, the statute does require, it requires, since birds are animals. So then why is it obvious then that we need to remand this to the district court to determine whether that agency action has been unreasonably delayed? Because it hasn't done that, right? It is, there hasn't been any formal change since the ANPR was issued. So I hear you agreeing with me that the department does have a legal obligation to regulate, to protect birds, that's number one. Number two, it hasn't done it, right? And so why isn't the logical conclusion from one and two, three, which is we need to remand it to determine whether the agency has unreasonably delayed its statutory obligation to protect birds not bred for research? What's the matter with that reasoning? The problem with that reasoning is that contrary to what the plaintiff asserted. How about what I just said? Forget what the plaintiff said, just what I just said. As long as the remand would not require the agency to promulgate bird-specific regulations, but would simply recognize... Well, you could argue, you could still, the government, I suppose, could still argue that 17 years is not an unreasonable delay. I mean, I don't know, maybe you'll convince the district court of that, and then that'll come back up here again. But do I hear you agreeing with me that it does have to go back to that determination? Well, if that is the way the court views the case, of course, we have taken a different position in our brief, and we believe that there has, that under SUA, there has not been a failure to take discrete action that the agency is required to take, and that there's also, that there has been no final agency action... Okay, but the final agency action question is separate, even if you're right about that. You've got an unreasonable delay claim here, right? There is an unreasonable delay claim, Your Honor, and the appropriate, again, not waiving our arguments... Well, do you want to try, I understand, do you want to try once more to explain, at least Judge Pillard and I both asked this question, why it is that you think your main argument is that the department doesn't have to issue regulations with respect to birds? Because that's what you say in your brief. Well, it... And I had the same reaction she did, which is, is your argument that it doesn't have the word all? That's what I thought you were arguing also. Well, again, there's still, there's, the agency can still choose, even though it suggested its skepticism in the ANPRM, that the general regulations would be appropriate. At the same, or it could promulgate bird-specific regulations, or simply adapt the general regulations. I'm sorry to interrupt, but both of those options are inconsistent with your statement in your brief and here today that the department doesn't have an obligation. You say in your brief, your language is, you say at page 13, this is what you say, the statute, quote, simply directs USDA to issue standards for the humane treatment of animals, close quote, then you add the word general. That's your argument. That is your, and we don't, respectfully, we don't believe that that's inconsistent. Our argument is that as a technical legal matter, the agency has complied with the statutory requirements by issuing the general standard and by regulating with respect to dogs and non-human primates. And that is all that, that is all that the statute requires. All right. Okay. That's all the statute requires if we ignore that birds not bred for research are also animals too. We recognize that in 2004. Yes. Okay. But it's, again, we do not feel that the agency is obligated to issue bird specific regulations, which is what the plaintiffs have asked for in this case. Well, actually, they haven't asked for it. They've asked for protection of birds either through the general or through a specific. Your Honor, I, again, respectfully question that characterization, because what they say, what they, in JA 29, in paragraph 3 of their request for relief, they ask for the relief compelling the USDA to publish their comment in the Federal Register by a court-ordered deadline, et cetera, proposed rules that govern the humane handling, care, treatment, and transportation of birds, and then to promulgate such rules. And that is not, that is, you know, that is a specific request for bird specific regulations. No, no, it's really not. I mean, it's kind of amazing that we're talking past each other to this degree, because they've disclaimed a requirement of bird specific regulation. They've asked for regulation that covers birds. And as far as I read the record, they've been consistent in asking for regulation that covers birds, whether that be in the form of including birds under the general rule or in the form of a rule specific for birds. Now, if that were, if I'm right in reading it that way, that that's all they're asking for is something that covers birds, your response that the Department is nonetheless in compliance is what? Again, it is, that is a technical matter. The agency issued promulgated general standards and specific standards where they are required with respect to that. And so it does go back. I thought you, when I asked you at the beginning of our argument whether you're resting on the fact that the statute doesn't say all animals, and you said no, you're not resting on that. You're not saying that it's adequate to have regulated in the general rule some subset of animals. You're not making that argument. Well. That the Department somehow has discretion to pick and choose among the covered animals, those that warrant regulation. That hasn't been your position. No. And it's not your position standing here today. That is not what we are arguing. Thank you. But if there is a remand, again, without waiving the argument that we've made, we would certainly urge the court to make it clear that the agency can regulate as it sees fit, either with respect to the general standards or to issue birds. All right. Thank you. Counsel has some time left, right? No? 20 seconds. You can take a whole minute. Thank you, Your Honor. I appreciate that. Just a couple quick points. Judge Pillard, you're exactly right on the bird-specific relief at the end. Paragraph 3 does not seek bird-specific regulations. We just want something. It could be the general regulations or not. It sounds like the court understands that. Jumping back to standing, Judge Pillard, you're right again. We don't need to identify a specific dollar figure in our complaint. I also just want to note, Pete is not an outlier. It built on Havens, Abigail Alliance, and Henshaw Alliance as well. My final point is that even with the remand, I just want to be clear that the unreasonable delay point, whether the delay was reasonable, was briefed by us. We cited track and other cases from this court on delay. And I do think that that's really a legal question. The 15-year delay is here. Track outlines several factors the court looks at. I've never seen a case. You did not cross-move for judgment on the pleadings. And so I'm just wondering, in terms of what relief we could offer, you know, it's possible that under track the government, had you cross-moved, would have introduced other information about its priorities and, you know, information that's relevant to track, but it hasn't done that. So you're not arguing that we should make an unreasonable delay final determination? Not a final determination. I do think the court should acknowledge that 15 years is not reasonable and no case from this court comes close to that. Well, that would just be dick them. I mean, that wouldn't help you if we sent the issue back to the district court, right? Well, it would. And I only make this point practically. How could we do that anyway? We don't really know what the government's – we don't know what arguments the government might have. Well, just to reiterate, we had briefed that point. There's never been any case law argument from the government that somehow the 15 years is reasonable. But if the remand is coming, then that's fine. I do appreciate the Court's time. Okay. Thank you both. The case is submitted.
judges: Tatel, Pillard, Wilkins